UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TERRANCE TERRELL MCCLINTON,

     Petitioner,      Case No. 2:24-cv-138

v.              Honorable Maarten Vermaat

CATHERINE S. BAUMAN,

     Respondent.
_____/

**<u>OPINION</u>**

  This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

  This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

  Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999).

After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.     Factual Allegations

Petitioner Terrance Terrell McClinton is incarcerated with the Michigan Department of Corrections at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Following a jury trial in the Calhoun County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b(1)(f) and assault with intent to commit criminal sexual conduct (CSC) involving sexual penetration, in violation of Mich. Comp. Laws § 750.520g(1). *People v. McClinton*, No. 359010, 2023 WL 8292161, at *1 (Mich. Ct. App. Nov. 30, 2023), *appeal denied,* 7 N.W.3d 817 (Mich. 2024).

The Michigan Court of Appeals generally described the facts underlying Petitioner's convictions as follows:

> This case arises out of an incident that occurred in Battle Creek, Michigan, during the early morning hours of June 29, 2019. The victim testified that, as she walked down a path near Taft Street, someone grabbed her from behind, dragged her into a wooded area, and sexually assaulted her. The victim screamed, and officers arrived at the scene during the assault. Officers were able to apprehend defendant

3

fleeing the area, and the victim identified defendant as the person who assaulted her.

*Id.*

On October 8, 2021, the trial court sentenced defendant as a fourth-offense habitual offender under Mich. Comp. Laws § 769.12, to serve 420 to 600 months' imprisonment for his CSC-I conviction and to serve 60 to 120 months' consecutive imprisonment for his conviction of the assault with intent to commit CSC involving sexual penetration. (Pet., ECF No. 1, PageID.1); *McClinton*, 2023 WL 8292161 at *1.

Petitioner appealed his convictions to the Michigan Court of Appeals, claiming that there was insufficient evidence to find Petitioner guilty of assault with intent to commit CSC involving sexual penetration, that Petitioner's convictions for both CSC-I and assault with intent to commit CSC involving sexual penetration violated Petitioner's constitutional right against double jeopardy, Petitioner's right to a speedy trial was violated because his trial was delayed more than 18 months, and Petitioner's due process rights were violated when the trial court admitted evidence of his identification during a "showup" conducted by law enforcement. *McClinton*, 2023 WL 8292161. On November 30, 2023, the Michigan Court of Appeals affirmed Petitioner's convictions. *Id.* Petitioner then sought leave to appeal to the Michigan Supreme Court, which was denied on July 2, 2024, because the Michigan Supreme Court was "not persuaded that the questions presented should be reviewed by [the c]ourt." *People v. McClinton*, 7 N.W.3d 817 (Mich. 2024).

On August 7, 2024, Petitioner filed his habeas corpus petition. The petition raises four grounds for relief, as follows:

I.      The Due Process Clause requires that sufficient evidence be presented so that a rational jury can find the elements proven beyond a reasonable doubt. Where insufficient evidence existed to establish assault with intent to commit sexual penetration vaginal was Mr. McClinton denied due process when he was convicted of the offense on Count 2?

II.     The Michigan and federal constitutions protect against multiple punishments for the same conduct where insufficient evidence exists to support Count 2 would allowing the conviction to stand violate double jeopardy as Count 1 encompasses all of the conduct at issue violated Mr. McClinton['s] [F]ifth [A]mendment rights and state constitutional rights?

III.    The state and federal constitutions guarantee the right to a speedy and public trial to all persons charged with crime[.] [T]he right needs to be asserted timely and entitles a Defendant to a [d]ismissal when violated[.] [W]here Mr. McClinton repeatedly asserted his right while being denied bond for other two years was Mr. McClinton['s] right to a speedy trial violated and should the case have been dismissed?

IV.     Mrs. Waller told police that her attacker was a black male wearing a white t-shirt and blue jean shorts[.] I did not fit identification what she told police it was wrong identification that she told police. My discovery from the laboratory reports said that I was [e]xcluded me from the crime. Mr. Patrick O'Connell was ineffective counsel by not challeng[ing] the prosecutor into trial court[.] [H]e [knew] it was no sufficient evidence for the charges.

(Pet., ECF No. 1, PageID.6.)

## II.      Exhaustion of State Court Remedies

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *O'Sullivan*, 526 U.S. at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his

federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138–39.

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). While Petitioner raised his first three claims on direct appeal of his criminal convictions, Petitioner acknowledges that he did not fairly present his fourth ground for relief to all levels of the state appellate courts. (ECF No. 1, PageID.7.) Nonetheless, a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Therefore, despite the fact that Petitioner's fourth ground for habeas relief is unexhausted, the Court will consider the merits of Petitioner's claim below.

## III.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28

6

U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the

underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV.   Discussion

### A.   Gound I: Insufficient Evidence

Petitioner contends that there was insufficient evidence to convict Petitioner of assault with intent to commit CSC involving sexual penetration. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to

the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

> [T]he sufficiency of the evidence review authorized by *Jackson* is limited to "record evidence." 443 U.S., at 318. *Jackson* does not extend to nonrecord evidence, including newly discovered evidence. Finally, the *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.

*Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In addressing Petitioner's arguments on appeal regarding the sufficiency of the evidence for Petitioner's conviction for assault with intent to commit CSC involving sexual penetration, the Michigan Court of Appeals applied the following legal standard:

> We review a claim that evidence was legally insufficient by reviewing the evidence in a light most favorable to the prosecution to ascertain whether a trier of fact could find that the elements of the crime were proven beyond a reasonable doubt. *People v Williams*, 294 Mich. App. 461, 471 (2011); *see Jackson v Virginia*, 443 U.S. 307, 324 (1979).

*McClinton*, 2023 WL 8292161 at *1. The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. Williams v. Taylor, 529 U.S. 362, 406 (2000) (noting that "a run-of-the-mill state-court decision

applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

Because the Michigan Court of Appeals applied the correct standard, Petitioner can only overcome the deference afforded state court decisions if the court of appeals' conclusion regarding the sufficiency of the evidence is an unreasonable application of *Jackson* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d). Petitioner cannot do so.

The Michigan Court of Appeals addressed Petitioner's claim regarding insufficient evidence to support his conviction for unlawful imprisonment as follows:

> To establish the crime of assault with intent to commit CSC involving sexual penetration pursuant to MCL 750.520g(1), the prosecution must prove "(1) an assault, meaning an attempt to commit a battery or an unlawful act that places another person in reasonable apprehension of an imminent battery, and (2) an intent to commit CSC involving sexual penetration." *People v Hoskins*, 342 Mich App 194, 204; 993 NW2d 48 (2022). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993).

> At trial, the victim testified that defendant grabbed her by the neck and hair, threw her to the ground, and pulled off her shorts. She further testified that, as she faced defendant while she was pinned to the ground, she vigorously punched, kicked, and otherwise fought to prevent defendant from sexually penetrating her. Throughout this part of the incident, the victim was screaming for defendant to stop raping her. The victim also testified that she fought hard enough to prevent defendant from penetrating her until she was turned onto her side and defendant inserted his penis into her anus. The nurse who conducted the victim's sexual assault examination testified that the victim had "multiple abrasions, lacerations and injuries to her anus and her vaginal area." The nurse agreed that the injuries to the victim's vagina and anus were bleeding or seeping and that "[t]hey were all fresh injuries." The victim also testified that she had no physical injuries before the assault.

> We hold that this evidence was sufficient to establish the elements of assault with intent to commit CSC through vaginal penetration. Viewing the evidence in a light most favorable to the prosecution, the evidence shows that defendant was on top of

11

the victim when he tried to sexually penetrate her vagina, but the victim was able to stop defendant from doing so, though she nonetheless sustained multiple injuries to her vaginal area.[1]

Defendant also argues that one instance of anal penetration of the victim occurred, which renders the assault with intent to commit CSC through vaginal penetration speculative. However, the fact that another crime occurred, CSC-I, during which defendant penetrated the victim's anus, does not negate his commission of another crime, assault with intent to commit CSC by penetrating the victim's vagina. Had defendant only intended to commit CSC by penetrating the victim anally, he would not have thrown the victim and pinned her down while she was lying on her back, and the victim would not have had to fight defendant from penetrating her while she was facing him. It was only after defendant's attempt to penetrate the victim failed because the victim fought him off that defendant was able to commit CSC-I through anal penetration when the victim was turned on her side.

Defendant also asserts that the evidence was insufficient to establish his intent to assault the victim through vaginal penetration because evidence showed that male DNA was found on a vulvar swab in the rape kit and that the male DNA did not match defendant's DNA. We hold that the DNA result from the vulvar swab does not undermine or render speculative evidence that defendant committed assault with intent to commit CSC through vaginal penetration. As discussed, evidence showed that defendant attempted to penetrate the victim vaginally, but the victim was able to prevent him from doing so by fighting him off. Because defendant did not vaginally penetrate the victim, defendant was charged with assault with intent to commit CSC for this conduct. Further, the nurse who conducted the victim's sexual assault examination explained that DNA can be tested if it is swabbed within 120 hours of when it was left. Whether the victim had vaginal intercourse with someone else within 120 hours (five days) of this assault does not contradict evidence that defendant attempted to commit CSC through vaginal penetration. Accordingly, defendant's argument in this regard lacks merit.

*McClinton*, 2023 WL 8292161 at *1–2 (footnote omitted).

To prevail on his sufficiency claim now, Petitioner must show that the supporting evidence and inferences identified by the appellate court are unreasonable. In *Coleman v. Johnson*, 566 U.S. 650, 655 (2012), the Supreme Court provided some guidance with respect to the distinction between a reasonable inference and mere speculation. Based on the Court's analysis, a reasonable inference is an inference that a rational factfinder could make from the facts. That is hardly an

earth-shattering revelation, and it is not a particularly onerous burden. The Court went so far as to say, "the only question under *Jackson* is whether [a] finding is so insupportable as to fall below the threshold of bare rationality." *Id.* at 656.

Petitioner has offered nothing from which this Court could conclude that the court of appeals' inferences were irrational. Indeed, the Sixth Circuit has concluded that "the testimony of a rape victim alone is sufficient to support a defendant's conviction." *United States v. Howard,* 218 F.3d 556, 565 (6th Cir. 2000). Examining the factual determinations by the state court—which this Court presumes to be correct—the evidence against Petitioner was overwhelming. Petitioner, therefore, has failed to meet his burden as to his claim of insufficient evidence to support his conviction for unlawful imprisonment.

### B.       Ground II: Double Jeopardy

Petitioner contends that his convictions for both CSC-I and assault with intent to commit CSC involving sexual penetration violate Petitioner's Fifth Amendment rights, specifically, the Fifth Amendment's protection against double jeopardy. The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment's Due Process Clause, *Benton v. Maryland*, 395 U.S. 784, 787 (1969), "protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). The Double Jeopardy Clause acts as a check against "the vast power of the sovereign . . . and the injustice our criminal justice system would invite if prosecutors could treat trials as dress rehearsals until they secure the convictions they seek." *Currier v. Virginia*, 585 U.S. 493, 498 (2018). The Double Jeopardy Clause prohibits multiple trials, convictions, and punishments for the same "offense." *See Witte v. United States,* 515 U.S. 389, 391 (1995). However, "a single transaction can give rise

to distinct offenses under separate statutes without violating the Double Jeopardy Clause." *Albernaz v. United States,* 450 U.S. 333, 344 n. 3 (1981).

As the Sixth Circuit has explained, the Double Jeopardy Clause does not necessarily forbid multiple convictions for different offenses that occur during the same overall course of conduct. *White v. Howes,* 586 F.3d 1025, 1027 (6th Cir. 2009) ("The doctrine regarding the Double Jeopardy Clause draws a crucial distinction between multiple punishments for the same *conduct* (permissible) and multiple punishments for the same *offense* (impermissible)."). "It is well established that the Double Jeopardy Clause does not prohibit a state from defining conduct to constitute two separate criminal offenses." *Id.* at 1027–28 (citing *Missouri v. Hunter,* 459 U.S. 359, 368–69 (1983)).

The Court of Appeals applied an identical legal standard to Petitioner's double jeopardy claims, explaining:

> The United States Constitution, U.S. Const., Am. V, and the Michigan Constitution, Const. 1963, art. 1, § 15, both prohibit multiple punishments for the same offense. *People v Duenez*, 306 Mich App 85, 105-106; 854 NW2d 531 (2014). "The purpose of this prohibition, in a multiple-punishment context, is to prevent a court from imposing a sentence greater than that intended by the Legislature." *People v Baker*, 288 Mich App 378, 381; 792 NW2d 420, 422 (2010). To determine whether two punishments are permitted, our courts apply the test set forth in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). As this Court explained:

> The *Blockburger* test focuses on the statutory elements of the offense, without considering whether a substantial overlap exists in the proofs offered to establish the offense. If each offense requires proof of elements that the other does not, the *Blockburger* test is satisfied and no double jeopardy violation is involved. [*Baker*, 288 Mich App at 382 (citations omitted).]

> However, "[t]here is no violation of double jeopardy protections if one crime is complete before the other takes place, even if the offenses share common elements or one constitutes a lesser offense of the other." *People v Lugo*, 214 Mich App 699, 708; 542 NW2d 921 (1995).

14

*McClinton*, 2023 WL 8292161 at \*3.

Here, the Michigan statutes governing criminal sexual conduct define the respective crimes

in terms of acts or attempted acts of sexual penetration, not in terms of a single course of assault.

> To establish the crime of assault with intent to commit CSC involving sexual
> penetration pursuant to MCL 750.520g(1), the prosecution must prove "(1) an
> assault, meaning an attempt to commit a battery or an unlawful act that places
> another person in reasonable apprehension of an imminent battery, and (2) an intent
> to commit CSC involving sexual penetration." *People v Hoskins*, 342 Mich App
> 194, 204; 993 NW2d 48 (2022).

*McClinton*, 2023 WL 8292161 at \*1. On the other hand, when CSC-I is charged pursuant to Mich.

Comp. Laws § 750.520b(1)(f), the prosecution must prove that: (1) the defendant caused personal

injury to the victim; (2) the defendant engaged in sexual penetration with the victim; and (3) the

sexual penetration was accomplished by use of force or coercion. *People v Nickens*, 470 Mich 622,

629; 685 NW2d 657 (2004). "Sexual penetration" is defined, in relevant part, as including "any

other intrusion, however slight, of any part of a person's body or of any object into the genital or

anal openings of another person's body." Mich. Comp. Laws § 750.520a(r).

In addressing whether evidence existed to convict Petitioner of the separate crimes of CSC-

I and assault with intent to commit CSC involving sexual penetration, the Court of Appeals

explained:

> As discussed, evidence supported the jury's finding that defendant attempted to
> sexually assault the victim through vaginal penetration and that the victim was able
> to prevent defendant from vaginally penetrating her by fighting him off. Defendant
> then injured the victim by forcibly penetrating the victim's anus with his penis. The
> prosecutor showed that these were not the "same offense" and that defendant
> attempted one act of vaginal penetration before he accomplished the other act of
> anal penetration. Because the crime of attempt with intent to commit CSC was
> complete before defendant committed CSC-I, defendant was not punished twice for
> the same crime.

*McClinton*, 2023 WL 8292161 at \*3.

This Court finds the conclusion by the Court of Appeals to be entirely reasonable. Here, Petitioner's two convictions involved separate and distinct offenses; Petitioner was not convicted of "attempt[ing]" to commit the CSC-I penetration for which he was also found guilty. The evidence established that Petitioner first attempted to sexually assault the victim through penetration of the victim's vagina. When Petitioner was unsuccessful in that attempted act of penetration, the crime of assault with intent to commit CSC involving sexual penetration of the victim's vagina was complete. The facts as discussed in detail by the Court of Appeals also established that Petitioner then sexually assaulted the victim by forcibly penetrating the victim's anus. Therefore, Petitioner's convictions for these two separate offenses during the same assaultive "transaction" do not violate the Double Jeopardy Clause. *See Albernaz*, 450 U.S. at 344 n. 3. Petitioner is not entitled to habeas relief on his ground II.

## C.     Ground III: Speedy Trial

Petitioner claims that he was denied a speedy trial because his trial was delayed for 18 months. In *Brown v. Romanowski*, 845 F.3d 703 (6th Cir. 2017), the Sixth Circuit Court of Appeals reviewed the clearly established federal law with respect to the constitutional requirement for a speedy trial:

> The Sixth Amendment guarantees in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. These rights apply to the states through the Fourteenth Amendment. *Klopfler v. North Carolina*, 386 U.S. 213, 223 (1967). The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished. *Doggett v. United States*, 505 U.S. 647, 654 (1992); *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986); *United States v. MacDonald*, 456 U.S. 1, 7–8 (1982); *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972); *United States v. Marion*, 404 U.S. 307, 320 (1971); *United States v. Ewell*, 383 U.S. 116, 120 (1966). The sole remedy for a violation of the

16

speedy-trial right is dismissal of the charges. *See Strunk v. United States*, 412 U.S. 434, 439–40 (1973); *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999).

In *Barker*, the Supreme Court established a four-factor test for determining whether a defendant has been denied the constitutionally guaranteed right to a speedy trial. *Barker* held that a court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. No one factor is dispositive. Rather, they are related factors that must be considered together with any other relevant circumstances. *Id.* at 533.

*Brown*, 845 F.3d at 712. The *Barker* Court acknowledged that its test was a flexible balancing test and, thus, "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." *Barker*, 407 U.S. at 529–530. The flexibility of the test has significant implications for this Court's review under the AEDPA standard. "'The more general the rule at issue'—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough*, 541 U.S. at 664).[2]

The Michigan Court of Appeals applied the correct legal standard here as well, explaining:

A defendant's right to a speedy trial is guaranteed under the United States Constitution, U.S. Const., Am. VI, and the Michigan Constitution, Const. 1963, art.

---

[2] In the Michigan state courts, the right to a speedy trial is guaranteed by the United States constitution, U.S. Const. amend VI; the Michigan constitution, Mich. Const. 1963 art.1, § 20; state statute, Mich. Comp. Laws § 768.1; and court rule, Mich. Ct. R. 6.004(D). *People v. Cain*, 605 N.W.2d 28, 39 (Mich. Ct. App. 1999); *People v. McLaughlin*, 672 N.W.2d 860, 867 (Mich. Ct. App. 2003). The Michigan state courts apply the *Barker* four-factor test "to determine if a pretrial delay violated a defendant's right to a speedy trial[,]" whether the speedy trial right at issue arises from federal or state law. *Cain*, 605 N.W.2d at 39 (citing *People v. Collins*, 202 N.W.2d 769 (Mich. 1972)). To the extent that the state constitutional, statutory, and rule guarantees relating to a speedy trial require anything more than clearly established federal law requires, those additional requirements are purely matters of state law. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68.

1 § 20. *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013). As this Court explained in *Rivera*, 301 Mich App at 193:

> Whether an accused's right to a speedy trial is violated depends on consideration of four factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262.[3] When the delay is more than 18 months, prejudice is presumed, and the prosecution must show that no injury occurred. *Id.* at 262. When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice. *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999). "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Williams*, 475 Mich at 261.

*McClinton*, 2023 WL 8292161 at *3–4.

As to the length of the delay, the Court notes that Petitioner "was arrested on June 29, 2019, and his trial began on August 4, 2021." *Id.*, at *4. Courts have generally found post-accusation delays that approach one year to be "presumptively prejudicial" requiring an analysis of the remaining *Barker* factors. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

However, as to the facts pertaining to the remaining factors, the Michigan Court of Appeals observed:

> On April 19, 2021, the trial court held a hearing on defendant's motion for bond and his pro se motion to dismiss for violation of his right to a speedy trial. The trial court observed that defendant's case was scheduled at the top of the court's list of jury trials and would move forward as soon as jury trials resumed in Calhoun County amid changing circumstances due to the COVID-19 pandemic. The trial court further ruled that plaintiff was ready to go to trial and that the delay was not caused by the prosecutor's office, but by the global pandemic. In denying defendant's motion, the trial court also observed that defendant did not show that he was prejudiced in his ability to defend his case by any delay.

> We agree with defendant that the trial court erred by failing to recognize the presumption of prejudice to defendant because his trial was delayed for more than 18 months. See *Williams*, 475 Mich at 262. However, the trial court's denial of defendant's motion to dismiss did not constitute an abuse of discretion, and in spite of the trial court's legal error, the delay appears to have been unavoidable and not prejudicial to defendant.

> On November 25, 2019, the trial court issued a "Criminal Jury Trial Notice," on which defendant's case was listed, among others, to be tried between December 4,

2019 and December 20, 2019. On December 4, 2019, the trial court issued a notice scheduling defendant's trial for April 28, 2020. However, in response to the COVID-19 pandemic, our Supreme Court issued various administrative orders that imposed emergency measures, adjourned criminal jury trials, and extended those adjournments with plans to return to full capacity. See Administrative Order No. 2020-1, 505 Mich xcix; Administrative Order No. 2020-2, 505 Mich cii (2020); and Administrative Order No. 2020-19, 505 Mich clxvii (2020). On the basis of those orders, defendant's trial was delayed until August 2021, which, according to the trial court, was one of the first criminal trials to be held in that court after the COVID-19 pandemic caused trials to be delayed. In defendant's motion for bond, he specifically acknowledged that the pandemic caused the delay after the trial was scheduled for April 28, 2020.

*McClinton*, 2023 WL 8292161 at *4.

Although this Court agrees that the delay in bringing Petitioner's case to trial was perhaps substantial, the vast majority of the delay was attributable to the COVID-19 pandemic. The Sixth Circuit has previously determined that a delay such as this, attributable to the COVID-19 pandemic "was a permissible action in response to the public health emergency." *McCorkle v. Robinson*, No. 22-3567, 2023 WL 7399480, at *2 (6th Cir. July 31, 2023), *cert. denied,* 144 S. Ct. 521, 217 L. Ed. 2d 273 (2023) (citing *United States v. Jones*, No. 21-3252, 2023 WL 1861317, at *7 (6th Cir. Feb. 9, 2023)); *United States v. Roush*, No. 21-3820, 2021 WL 6689969, at *2 (6th Cir. Dec. 7, 2021); *United States v. Olsen*, 21 F.4th 1036, 1047 (9th Cir. 2022) ("[S]urely a global pandemic . . . falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health.")).

Moreover, "[i]n this circuit, the defendant is required to show that the delay caused substantial prejudice." *Brown*, 845 F.3d at 716; *see also United States v. Love,* 178 F.3d 1297 (6th Cir.1999) (discussing only actual prejudice, even where delay was 21 months). Here, Petitioner fails to demonstrate that he suffered any prejudice as a result of the delay. As a result, the Court does not find the decision by the Court of Appeals to be an unreasonable application of clearly established law. Therefore, Petitioner is not entitled to relief on his ground III.

19

D.      **Ground IV: Ineffective Assistance of Counsel**

For the first time, Petitioner asserts that defense counsel was ineffective for failing to raise a challenge to the sufficiency of the evidence, claiming that, because the victim first incorrectly identified Petitioner's clothing in her description to police and because the Petitioner's "discovery from the laboratory reports said that [Petitioner] was excluded . . . from the crime," the prosecution lacked sufficient evidence to support the convictions. (Pet., ECF No. 1, PageID.7.) The Court will consider this claim *de novo*.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Counsel has no duty to raise futile or meritless claims. *See, e.g., Henness v. Bagley*, 644 F.3d 308, 319 (6th Cir. 2011) ("Because Henness has not demonstrated that his Fourth Amendment

claim has merit, his underlying ineffective assistance of trial counsel claim fails, along with the ineffective assistance of appellate counsel claim." (citations omitted)); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (holding that counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel") Here, because Petitioner's underlying claims of insufficient evidence are meritless, the Court finds that defense counsel cannot be found ineffective for declining to raise them.

First, for the same reasons discussed in Section A., above, Petitioner's claim of insufficient evidence for his conviction for assault with intent to commit CSC involving sexual penetration is entirely lacking in merit.

Second, as discussed in Section B., though not specifically addressed by the court of appeals, the facts and inferences observed by the court of appeals also support Petitioner's convictions for CSC-I. It is not possible for this Court to conclude that, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the elements of the foregoing crimes satisfied beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. Here, the court of appeals explained that the victim testified that Petitioner "grabbed her by the neck and hair, threw her to the ground, and pulled off her shorts." *McClinton*, 2023 WL 8292161 at *3. Petitioner pinned the victim to the ground while "she fought hard enough to prevent defendant from penetrating her until she was turned onto her side and defendant inserted his penis into her anus." *Id.* The nurse who conducted the victim's sexual assault examination testified that the victim's injuries were consistent with sexual assault. *Id.*.

Notably, "[t]he facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016). Petitioner can overcome that presumption with clear and convincing evidence; he has not.

He does not offer any evidence to show that the court of appeals' identification of supporting evidence and inferences is unreasonable on the record. Instead, Petitioner's arguments invite this Court to reweigh the victim's credibility and resolve all conflicts and make all inferences in his favor. Under *Jackson*, a habeas court is not required to sift through the evidence and place it on one side of the scale or the other for the purpose of assessing whether the jurors' estimation of the balance is correct. Rather, the Court is only required to look at the evidence in a light that favors the prosecution and assess whether a rational factfinder could conclude that Petitioner is guilty beyond a reasonable doubt considering that evidence. Certainly, one could interpret the underlying events differently and reach different conclusions—as Petitioner asks this Court to do—but that does not render the jury's determination unreasonable. It is up to the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences, so long as the inferences are reasonable. *See Herrera*, 506 U.S. at 401–02; *Martin*, 280 F.3d at 618. Petitioner's invitation turns the *Jackson* standard on its head.

Petitioner has failed to show that there exists any merit to his arguments that insufficient evidence existed to support his convictions for CSC-I and assault with intent to commit CSC involving sexual penetration. Therefore, Petitioner cannot maintain a claim for ineffective assistance of counsel based upon defense counsel's failure to raise such claims. Petitioner has not shown any entitlement to habeas relief.

## V.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).

Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   September 19, 2024                     /s/ *Maarten Vermaat*
                                                              Maarten Vermaat
                                                              United States Magistrate Judge

23